ELVIS PRESLEY ENTERPRISES, INC., a Tennessee corporation; National Bank of Commerce, trustee of the Promenade Trust; Sofa Entertainment, Inc., a California corporation; Jane Meadows Allen, trustee of the Allen Family Revocable Living Trust; Jerry Leiber, individually dba Jerry Leiber Music; Mike Stoller, individually dba Mike Stoller Music; Julian J. Aberbach, an individual; Alfred Wertheimer, an individual, Plaintiffs–Appellees,

v.

PASSPORT VIDEO, a business of unknown form and origin; Passport International Productions, Inc., a California corporation; Passport International Productions of California, Inc., a California corporation; Dante J. Pugliese, an individual, Defendants–Appellants.

and

Does, 1 through 10, inclusive; Passport Entertainment, a California corporation, Defendants.

No. 02–57011.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2003.

Filed Nov. 6, 2003.

Amended Dissent Feb. 6, 2004.

Michael R. Blaha, Santa Monica, CA, for the defendants-appellants.

George R. Hedges and Kristen Bird, Quinn Emanuel Urquhart Oliver & Hedges, LLP, Los Angeles, CA, for the plaintiffs-appellees.

Before: NOONAN, TALLMAN, and RAWLINSON, Circuit Judges.

NOONAN, Circuit Judge, dissenting:

## AMENDED DISSENT

The district court has misstated critical facts and has misstated the governing law. For these reasons, we should reverse its grant of a preliminary injunction.

*The Facts.* That the plaintiffs hold copyrighted materials and the defendant used portions of them were not and are not disputed facts. Passport's principal defense was that its use of the materials was fair use. Here the facts were disputed. Here the district court made critical misstatements as follows:

Finding of Fact 11: "The portions of *The Ed Sullivan Show* included on *The Definitive Elvis* are exact reproductions; the Defendants did not add anything new or transformative to the copyrighted work."

Finding of Fact 13: "The portions of *Ed Sullivan's Rock & Roll Classics—Elvis Presley* included on *The Definitive Elvis* are exact reproductions; the Defendants did not add anything new or transformative to the copyrighted work."

Finding of Fact 22: "Portions of 'The Elvis 1968 Comeback Special,' 'Elvis Aloha From Hawaii,' and 'Elvis in Concert' have been copied and appear in *The Definitive Elvis*. The portions of these works included on *The Definitive Elvis* are exact reproductions; the Defendants did not add anything new or transformative to the copyrighted works."

Finding of Fact 35: "Portions of the 1956 episode of *The Steve Allen Show* featuring Elvis Presley are copied and appear on *The Definitive Elvis*. The portions of *The Steve Allen Show* included on *The Definitive Elvis* are exact reproductions; the Defendants did not add anything new or transformative to the copyrighted works."

In each of these instances, there are in fact voice-overs produced by Passport. None of the Findings of Fact acknowledge the existence of the voice-overs. These omissions are capital. The voice-overs are indisputably new.

Not only are the ignored voice-overs new. They are transformative. They turn the original Presley shows into part of a substantial biography. The court's denials that newness and transformative quality are characteristic of these uses are substantial errors of fact. To give one example, in the clips taken from *The Steve Allen Show,* the voice-over includes comments from the narrator, Elvis's friends and band members about his appearance on the show and later reactions to his performance from Elvis himself. Rather than regurgitation, Passport provides independent analysis of the appearance and frames it in the context of Elvis's life and career.

In addition to these large errors as to the new and transformative uses, in Finding of Fact 19 on the material used from Elvis Presley Home Movies, the district court failed to note the extraordinarily small amount of material used by Passport. The length of the clip is 4 seconds. It was error to treat as unfair use such a tiny fragment integrated into a large biographical mosaic.

Finding of Fact 43 denies newness or transformative quality to photos copyrighted by photographer Alfred Wertheimer. As in the rest of the documentary, voice-overs accompany many if not all of the photos. The photos are not presented for their own sake. They are intelligently incorporated into the larger, 16–hour biography that Passport has made. Fans wanting photos of Elvis would not find *The Definitive Elvis* to be a viable substitute. The use in the biography is new and transformative.

Finding of Fact 25 bears on music whose copyright is in The Promenade Trust and Finding of Fact 40 bears on music whose copyright holder is L & S. As in its other findings, the district court found nothing new or transformative in the use made by Passport. However, the music is used largely as background, and the median length of the excerpts played was about ten seconds. Voice-overs accompany much of the music, rendering large parts of the excerpts virtually inaudible. Findings of Fact 25 and 40 fail to address the audibility of the music and the relation of the new words to what is played.

The district court adopted eight of the plaintiffs' Findings of Fact on fair use. Six are demonstrably wrong. The two on music are ambiguous. None can be relied upon. Why the court committed these errors is not difficult to discover. The court adopted wholesale the twelve pages entitled "Findings of Fact" prepared by the plaintiffs. With the exception of eliminating five irrelevant sentences, the court did not change a comma or a phrase.

Such a practice of using findings prepared by a party is not unusual. It is not forbidden, although a judge may not abdicate his responsibility by continuing to omit key facts that have been omitted by the party on whose work the judge is relying. In a copyright case where fair use is the issue, this practice destroys the delicate discrimination necessary if fair use is to be fairly evaluated. We have more than once stated that such mass adoption of "the suggestions" of a party will require "special scrutiny" on appeal. *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 222 (9th Cir.1989); *Photo Elecs. Corp. v. England*, 581 F.2d 772, 776–77 (9th Cir.1978). In the instant case, the repeated errors committed by the district court because of its reliance on the drafting of the plaintiffs relieve us of any duty to defer to the trial judge.

The district judge's job in reviewing uses claimed to be transformative is particularly important as the fair use doctrine is intended to preserve the values enshrined in the First Amendment. *See Eldred v. Ashcroft*, 537 U.S. 186, 219–20, 123 S.Ct. 769, 154 L.Ed.2d 683 (2003). When the trial court simply accepts the defendant's assertions, the constitutional values are ignored.

*The Law.* The district court found the plaintiffs' statement of the law as exact as the plaintiffs' rendition of the facts. Doing so, the court repeated several truisms, but on the critical point at issue it again fell into serious error. What the plaintiffs, and the district court following the plaintiffs, neglected to note is the need of an examination of "the public interest in determining the appropriateness of a preliminary injunction." *Sammartano v. First Judicial District*, 303 F.3d 959, 974 (9th Cir.2002); *see also Fund for Animals v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.1992). *Sammartano* makes clear that "[w]hile we have at times subsumed this inquiry into the balancing of hardships, it is better seen as an element that deserves separate attention in cases where the public interest may be affected." *Sammartano*, 303 F.3d at 974 (citation omitted).

The resolution of this case and the grant of the preliminary injunction affect the public interest. The King is dead but his legacy remains very much alive. *The Definitive Elvis* documentary purports to offer the public, as described by its packaging, "an all-encompassing, in-depth look at the life and career of a man whose popularity is unrivaled in the history of show business and who continues to attract millions of new fans each year." A review by a more objective source, *The USA Today,* described the documentary as "the most comprehensive overview yet of the King's personal and professional life." Edna

Gunderson, *'The Definitive Elvis': Eight CDs, 16 Hours, $99,* USA Today, July 19, 2002, at 1E.

In *Abend v. MCA,* 863 F.2d 1465, 1479 (9th Cir.1988), *aff'd sub nom. Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990), another case not addressed by the district court's Conclusions of Law, our court found that because "an injunction could cause public injury by denying the public the opportunity to view a classic film," Hitchock's *Rear Window,* monetary damages would adequately compensate the plaintiff for any infringement. Other courts have reached similar conclusions, finding "a strong public interest favoring the publication of books and novels." *Trust Co. Bank v. Putnam Publ'g Group, Inc.,* 5 U.S.P.Q.2d 1874, 1877, 1988 WL 62755 (C.D.Cal.1988). There is "little doubt" that a television biography of Muhammed Ali "is a subject of public interest," *Monster Communications, Inc. v. Turner Broad. Sys., Inc.,* 935 F.Supp. 490, 494 (S.D.N.Y.1996). There is equally little doubt of the public interest in Elvis.

The district court conducted no analysis of the public interest, either as part of a balancing of hardships or as the separate inquiry called for by *Sammartano.* This failure also led to the district court ignoring money damages as the appropriate equitable remedy for any infringement where fair use was not shown. *Abend,* 863 F.2d at 1479. In a case of this kind involving the biography of a man with an immense following, it is necessary for a court to keep in mind that injunctions are a device of equity and are to be used equitably, and that a court suppressing speech must be aware that it is trenching on a zone made sacred by the First Amendment. *See* Mark A. Lemley & Eugene Volokh, *Freedom of Speech and Injunctions in Intellectual Property Cases,* 48 Duke L.J. 147 (1998).

The district court's absolute neglect of this interest is compounded by the absolute absence of attention to it by this court in its opinion in this case. Indifference to the public interest at stake incorporates a profound misunderstanding of the purpose of the constitutional empowerment of Congress to protect copyright. As the Supreme Court, reversing this circuit twenty years ago, patiently explains: "The monopoly privileges that Congress may authorize are neither unlimited nor primarily designed to provide a special private benefit. Rather, the limited grant is a means by which an important public purpose may be achieved." *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984).

The *Sony* Court went on to quote *United States v. Paramount Pictures:*

> "The sole interest of the United States and the primary object in conferring the monopoly lie in the general benefits derived by the public from the labors of authors." It is said that reward to the author or artist serves to induce release to the public of the products of his creative genius.

334 U.S. 131, 158, 68 S.Ct. 915, 92 L.Ed. 1260 (1948) (quoting Chief Justice Hughes in *Fox Film Corp. v. Doyal,* 286 U.S. 123, 127, 52 S.Ct. 546, 76 L.Ed. 1010 (1932)). To neglect the public interest in the protection afforded a copyright is to forget the purpose of copyright law. The constitution permits the creation of temporary monopolies in a context ruled by our American suspicion of monopolies and our high valuation of freedom of expression. *See Eldred v. Ashcroft,* 537 U.S. at 219, 123 S.Ct. 769.

"We review a grant or denial of a preliminary injunction for abuse of discretion," and "[a]pplication of erroneous legal principles represents an abuse of discretion by the district court." *A & M Rec-*

*ords, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001). The district court's failure to apply the appropriate legal standard was such an abuse of discretion.

As to each of the factors bearing on fair use, the present opinion of the court defers to the factfinding of the district court and emphasizes that "our holding today is not intended to express how we would rule were we examining the case *ab initio* as district judges." But given the string of factual errors committed by the district judge, we make a mistake in according such deference. The mistake is magnified by the district court's and this court's remarkable error of law in failing to weigh the public interest in a biography of Elvis.

For these reasons, the grant of the preliminary injunction was a miscarriage of justice.